UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Tamiko A.,[1] <br><br>　　　　　　Plaintiff, <br><br>　v. <br><br>Carolyn Colvin, Acting Commissioner of Social Security Administration, <br><br>　　　　　　Defendant. | Case No. 2:25-cv-00075-BNW <br><br>**ORDER** |

  This case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Tamiko A.'s ("Plaintiff") application for benefits under Title II of the Social Security Act. Plaintiff moves for this Court to reverse the Commissioner's decision and remand for further administrative proceedings. ECF No. 11 at 10. The Commissioner opposes and asks this Court to affirm the Commissioner's decision. ECF No. 15 at 19. Plaintiff filed a reply reiterating her position. ECF No. 16. For the reasons discussed below this Court denies Plaintiff's motion and affirms the Commissioner's decision.

**I.　　BACKGROUND**

  On February 28, 2022, Plaintiff applied for Disability Insurance Benefits pursuant to Title II of the Social Security Act, alleging an onset date of November 15, 2015. AR[2] 217-218. Plaintiff has a date last insured of December 31, 2019. AR 263. Plaintiff's claim was denied initially, and on reconsideration. AR 121-131. Plaintiff requested a hearing in front of an

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

[2] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 9).)

1  Administrative Law Judge ("ALJ"), and the appointed ALJ conducted a hearing on August 24,
2  2023. AR 43-79. On March 29, 2024, the ALJ issued a decision finding Plaintiff not disabled.
3  AR 17-34. The Appeals Council declined to review, and the ALJ's decision became final on
4  November 25, 2024. AR 1-3. Plaintiff timely filed this action for judicial review under 42 U.S.C.
5  §§ 405(g).

## II.     STANDARD OF REVIEW

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The Court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."

*Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**A. Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the ALJ will make a finding of non-disability. *Id.* If the individual is not engaged in SGA, then the analysis proceeds to the step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. *Id.* If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). *See* 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work the individual performed within the past 5 years. *Id.* § 404.1560(b)(1)(i). The work must have also lasted long enough for the individual to learn the job and performed an SGA. *Id.* If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. *Id.* § 404.1520(a)(4)(iv). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If can do other work, then the ALJ makes a finding of non-disability. *Id.* Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. *See Bowen*, 482 U.S. at 141–42. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Id.*

**B.  The ALJ Decision**

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had had not engaged in substantial gainful activity during the period from her alleged onset date of March 16, 2016, through her date last insured of December 31, 2019. AR 21. At step two, the ALJ found Plaintiff had the following severe impairments: asthma and rheumatoid arthritis ("RA"). *Id.* At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. AR 25.

Before proceeding to step four, the ALJ found Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with some limitations. AR 26. Specifically, the ALJ found the evidence supported that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand for 6 hours and/or walk for 6 hours in an 8-hour workday with no

limitations with sitting; push/pull as much as much as she can lift/carry; operate foot controls with bilateral feet frequently; operate hand controls with bilateral hands frequently; frequently reach in all directions including overhead with bilateral upper extremities, and frequently handle or and finger with bilateral hands. AR 26. The ALJ also found that Plaintiff could occasionally climb ramps and stairs, but never climb ladders, ramps, or scaffolds; could frequently stoop; and could occasionally kneel, crouch, and crawl. *Id.* Other limitations that the ALJ identified were that Plaintiff could never work at unprotected heights and could have no more than occasional exposure to moving mechanical parts, humidity, wetness, dust, concentrated exposure to odors, fumes, pulmonary irritants, and exposure to extreme heat or cold. *Id.*

At step four, the ALJ found that Plaintiff was unable to perform any past, relevant work through the date last insured. AR 30. At step five, and with the assistance of the vocational expert (VE), the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could perform. AR 32. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. AR 34.

**II.    ANALYSIS**

Plaintiff moves to reverse the Commissioner's decision and remand this matter. ECF No. 11 at 10. She specifically challenges the ALJ's step three finding that she did not have an impairment or combination of impairments that met or equaled a listing, the ALJ's RFC determination as it pertained to Plaintiff's physical impairments, the ALJ's determination that Plaintiff's mental impairments were nonsevere along with the ALJ's failure to consider Plaintiff's mental impairments in her RFC determination, and the ALJ's reliance on the VE's testimony when deciding whether there were jobs existing in significant numbers that Plaintiff could perform. *Id.* at 3, 5, and 8. The Commissioner responds that the ALJ's analysis is supported by substantial evidence and argues that the decision should be affirmed. ECF No. 15 at 4, 11, 16.

**A.  The ALJ did not err in determining that Plaintiff's impairments or combination of impairments did not meet or equal a listing at step three.**

Plaintiff argues that the ALJ erred in failing to consider Listing 14.09 pertaining to inflammatory arthritis. ECF No. 11 at 3. She argues that the ALJ only considered the listing for

asthma, despite finding that both asthma and RA were severe impairments. ECF No. 11 at 3, AR 21. Plaintiff argues that she meets Listing 14.09 because she was diagnosed with RA, exhibited significant joint involvement, reported stiffness and pain, and she used a cane. ECF No. 11 at 5. The Commissioner argues that although the ALJ did not specifically consider Listing 14.09, the ALJ generally found that the Plaintiff did not have an impairment or combination of impairments that met or equaled a listing, and that evidence supported that finding. ECF No. 15 at 5,7.

If a plaintiff has an impairment or combination of impairments that meets or equals a condition outlined in C.F.R. Part 404, Subpart P, Appendix 1, the plaintiff is presumed disabled at step three. 20 C.F.R. § 404.1520(4)(iii). To meet the requirements of a listing, the Plaintiff "must have a medically determinable impairment that satisfies all of the criteria of a listing." 20 C.F.R § 404.15.25(d); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An ALJ must evaluate the relevant evidence before determining whether a plaintiff meets or equals a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.*

Here, although the ALJ generally found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing, she did not give detailed findings as to Plaintiff's rheumatologic condition. This lack of findings is exacerbated by the fact that the ALJ gave detailed findings in her step three analysis as to her consideration of Listing 3.03 regarding asthma without mentioning Plaintiff's RA at all. This Court finds the ALJ's general step three determination to be a "boilerplate finding [that] is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listed impairment]." *Id.*

But the inquiry does not end there. The Ninth Circuit has instructed courts to look to other portions of the ALJ decision to determine whether her step three finding is supported by substantial evidence. *Smith-Grube v. Kijakazi*, No. 2:21-cv-01574-BNW, 2022 WL 2072573, at *5 (D. Nev. June 8, 2022) (referencing *Lewis*, 236 F.3d at 512). As a result, this Court reviews the ALJ's entire decision, including her RFC discussion, to determine whether the ALJ's findings lend support to her step three determination.

Listing 14.09 requires a plaintiff to show that she has an inability to use one upper extremity to "independently initiate, sustain, and complete work-related activities involving fine and gross movements" *and* a documented medical need for a one-handed, hand-held assistive device. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.09(A)(1)(b) (emphasis added). Alternatively, Listing 14.09 requires a plaintiff to demonstrate inflammation or deformity in one or more major joints of an upper or lower extremity with involvement of two or more organs/body systems with one involved to at least a moderate level of severity and at least two constitutional symptoms such as severe fatigue or fever. *Id.* at § 14.09(B).

As discussed in further detail below, the ALJ determined that Plaintiff had the RFC to perform light work with some limitations. AR 24-25. The ALJ evaluated Plaintiff's medical evidence to determine that she could frequently reach overhead with the bilateral upper extremities and frequently handle and finger with the bilateral hands. AR 26. She also determined that Plaintiff could stand or walk for six hours in an eight-hour workday because her medical records suggested that her use of a cane was inconsistent and not medically necessary. AR 30. These findings support that Plaintiff did not have an inability to "independently initiate, sustain, and complete work-related activities involving fine and gross movements" nor did she demonstrate a documented medical need for a one-handed, hand-held assistive device even though she used one occasionally. Thus, Plaintiff did not satisfy Listing 14.09(A)(1)(b).

The ALJ also determined that Plaintiff's medical record did not support Plaintiff's reports of fatigue due to anemia for the relevant period, so Plaintiff would only need breaks at roughly two-hour intervals during the workday and was not expected to be off-task due to her symptoms. *See id.* Since the only constitutional symptom Plaintiff testified to was severe fatigue, and the ALJ found that the medical record did not support Plaintiff's testimony, the ALJ's findings support that Plaintiff did not have at least two constitutional symptoms along with the inflammation of her joints as required to satisfy Listing 14.09(B). Looking at the ALJ's entire decision, this Court finds that the ALJ adequately discussed and evaluated evidence to support her finding that Plaintiff's impairments or combination of impairments did not meet or equal a listing

at step three. In making this finding, this Court recognizes that Plaintiff also disputes the ALJ's RFC determination as it pertains to her RA symptoms. This argument is addressed below.

### B. The ALJ adequately supported her rejection of Plaintiff's subjective symptom testimony regarding her physical impairments when determining her RFC.

Plaintiff argues that the ALJ did not adequately consider Plaintiff's testimony regarding her anemia and rheumatologic condition when assigning her an RFC of light work. ECF No. 11 at 7. Plaintiff argues that if the extreme fatigue she experienced because of her anemia was considered, the ALJ would have found that she would have missed more work or would have been more off-task than would be permitted in competitive employment. *Id.* She also argues that the ALJ did not consider that her joint pain would prevent her from engaging in light work. *Id.* The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective symptom allegations and supported her findings with substantial evidence. ECF No. 15 at 7.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). A claimant is not required to show her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could have reasonably caused some degree of that symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

Here, Plaintiff testified that she could not stand for a long time and had trouble lifting anything over 5-10 pounds during the relevant period. AR 63-65. She said that the largest impediments to working were the swelling and pain in her joints, blurred vision, hip pain, and fatigue. *Id.* at 64-65. Plaintiff testified that her fatigue was largely due to anemia and side effects from her medication for RA which included drowsiness and blurred vision. AR 60.

For the first step of the analysis, the ALJ a found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 28. For the second step, the ALJ considered Plaintiff's testimony as to her RA symptoms and compared that testimony to her medical records and the opinions of her rheumatologist. AR 28-30.

The ALJ found that Plaintiff's testimony was not entirely consistent with the medical evidence. AR 28. The ALJ noted that Plaintiff was diagnosed with RA in May 2019 and began taking methotrexate to treat it. *Id.* In December 2019[3], Plaintiff began seeing rheumatologist Dr. Rhim-Kim for RA. *Id.* During her December 2019 exam with Dr. Rhim-Kim, Plaintiff reported that she did not see any improvement in her joint pain while taking the methotrexate, but she also did not report any side effects other than mild hair loss. *Id.* at 28, 1097. Dr. Rhim-Kim's notes indicated that Plaintiff had no more than mild deficits including mild wrist swelling, mild hip pain, and mildly decreased knee flexion. *Id.* Additionally, Plaintiff did not exhibit cyanosis, clubbing, or edema in her extremities, nor did she report any fatigue. *Id.* Dr. Rhim-Kim increased the methotrexate and asked Plaintiff to increase ibuprofen as necessary. *Id.* at 29, 1097.

During the relevant period, the ALJ found that there was no record of anemia, fatigue, or blurred vision. AR 29. Dr. Rhim-Kim provided a prescription for a cane in 2019 upon Plaintiff's request, but the ALJ noted that nothing in Dr. Rhim-Kim's report or Plaintiff's other records indicated that the cane was medically necessary. AR 29. Further, although Plaintiff's medical records from 2020-2022 were made after Plaintiff's date last insured, the ALJ briefly reviewed them to find that, so long as Plaintiff continued taking her medication for RA, she exhibited no more than mild synovitis and otherwise reported that she was "doing well". AR 29.

After summarizing the relevant medical evidence, the ALJ found that because Plaintiff's objective medical records showed no more than mild deficits in her joints as well as significant benefit from medication, a light RFC was appropriate. *Id.* However, she found that Plaintiff required some postural, manipulative, and environmental limitations to prevent any

---

[3] Plaintiff testified that she did not receive a lot of RA treatment during the relevant period because she was out of the state for several months in 2019 caring for her mother. AR 58.

"breakthrough pain". *Id.* Thus, this Court finds that the ALJ adequately explained why the objective medical evidence was inconsistent with Plaintiff's subjective symptom testimony and provided specific, clear, and convincing reasons for rejecting it. *See Oxley v. Kijakazi*, No. 2:23-cv-1379-EJY, 2024 WL 1253588 at *4 (D. Nev. March 21, 2024) (finding that the ALJ's findings contrasting objective medical evidence with the plaintiff's subjective symptom testimony were sufficient to conclude that the plaintiff's testimony was not credible). Because the ALJ's RFC determination as to Plaintiff's physical impairments is supported by inferences reasonably drawn from the record, it must be upheld. *See Batson*, 359 F.3d at 1193.

### C. The ALJ did not err in finding that Plaintiff's mental impairments were nonsevere and adequately considered Plaintiff's mental impairments in determining her RFC.

Plaintiff argues that the ALJ erred in determining that Plaintiff's mental impairments were nonsevere at step two because the ALJ's adverse assessment of Plaintiff's subjective symptom testimony as to her mental impairments of bipolar disorder and depression was not supported by specific, clear, and convincing reasons. ECF No. 11 at 5, 7. Plaintiff also argues that even if the ALJ correctly determined that her mental impairments were nonsevere, the ALJ should have considered the impairments when determining her RFC. *Id.* at 7. The Commissioner responds that the ALJ properly assessed Plaintiff's impairments at step two and that the RFC finding need not explicitly limit Plaintiff for mild mental limitations in the special technique. ECF No. 15 at 13.

#### 1. The ALJ adequately supported her rejection of Plaintiff's subjective symptom testimony in finding that Plaintiff's mental health impairments were nonsevere.

The ALJ engaged in the same two-step analysis detailed above in analyzing Plaintiff's subjective symptom testimony as to her mental impairments. *See Garrison*, 759 F.3d at 1014.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 28. Second, the ALJ found that Plaintiff's mental impairments of depression and bipolar disorder did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were therefore nonsevere. AR 25.

In her decision, the ALJ recognized Plaintiff's testimony that her depression caused her to have a lack of interest in doing things and led to her napping more than once a day for four to five

hours. *Id.* The ALJ referred to Plaintiff's medical records from a follow up visit with her mental health provider in March 2019 in which she rated ongoing depression during some days of the week as high as 6/10. *Id.* at 24, 343. But the ALJ also noted that Plaintiff reported some improvement and improved sleep duration during that same follow up. *Id.* During a June 2019 follow up visit, Plaintiff reported that she was stable on current medications, that her sleep was good, and that she did not have any thoughts of self-harm, manic symptoms, or psychosis. *Id.* at 24, 339. Again, during a December 2019 follow-up visit, Plaintiff's medical records noted that her behavior had been stable and uneventful. *Id.* at 24, 335. Based on this review of Plaintiff's records, the ALJ determined that Plaintiff's testimony as to the limiting effects of her mental impairments were not entirely consistent with her medical records and provided specific, clear, and convincing reasons for rejecting that testimony. *See* AR 28.

To determine whether Plaintiff's mental impairments were severe based on her objective medical records, the ALJ assessed Plaintiff's mental functioning in four broad areas under the special technique described in 20 C.F.R. § 404.1520a. AR 23. The ALJ found that Plaintiff had no limitations three of the four areas. *Id.* at 23-24. These three areas were: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. *Id.* at 23-24. However, the ALJ found that Plaintiff had mild limitation in the area of managing oneself. *Id.* at 24. Because Plaintiff's mental impairments caused no more than mild limitation in any of the functional areas, and the evidence did not otherwise indicate that there was more than a minimal limitation in Plaintiff's ability to do basic work activities, the ALJ determined that Plaintiff's mental impairments were nonsevere. Accordingly, the ALJ's findings as to Plaintiff's mental impairments were supported by substantial evidence in the record, and this Court upholds the ALJ's findings at step two. *See Batson*, 359 F.3d at 1193.

**2. The ALJ properly considered Plaintiff's mental impairments in determining her RFC.**

As to Plaintiff's argument that her mental impairments should have been considered in the ALJ's RFC analysis and determination, this Court finds that the ALJ did consider them. AR 28.

Much of the ALJ's discussion as to whether Plaintiff's mental impairment symptom testimony was consistent with the record occurred in her RFC determination. AR 27-28. But because the ALJ evaluated the medical evidence against Plaintiff's testimony and ultimately found that Plaintiff's mental impairments were nonsevere, evidence did not warrant including specific mental functional limitations in the RFC. *See Jandrejack v. Saul*, 843 Fed. Appx. 993, 994-95 (9th Cir. 2021) (finding the same where the ALJ reviewed the four areas of mental function and determined the plaintiff's mental impairment was nonsevere).

### D.  The ALJ properly considered the VE's testimony.

Finally, Plaintiff argues that the ALJ erred by not holding a supplemental hearing or compelling the VE to provide the spreadsheets she relied on when testifying to the number of jobs available to a person of similar age, experience, and RFC as Plaintiff. ECF No. 11 at 8. Plaintiff contends the job numbers given by the VE, particularly the number of Ticket Taker jobs, are inflated. *See Id.* at 9. The Commissioner argues that there is no obligation to compel the VE to produce any data underlying her jobs testimony and that the ALJ's step five determination is supported by substantial evidence. ECF No. 15 at 16, 18.

An ALJ may take administrative notice of any reliable job information, including job information from a VE when assessing disability at step five. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). In the absence of any contrary evidence, a VE's testimony is regarded as inherently reliable. *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). "Given its inherent reliability a qualified [VE]'s testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020). Nevertheless, a VE may "offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial evidence bar." *Biestek v. Berryhill*, 587 U.S. 97, 105 (2019). Accordingly, the substantial evidence inquiry for VE testimony must proceed on a case-by-case basis. *Id.* at 108.

Here, the VE testified to the three sources that she retrieved jobs data from, how she cross-referenced them, how she used her expertise in deciding which job titles were obsolete within the Standard Occupational Classification ("SOC") codes, and how she reviewed the results

with professionals within her company that did the same work. AR at 75-77. She then testified that she took that information and added it to a spreadsheet for quick reference. *Id.* at 77.

Following the hearing, Plaintiff wrote to the ALJ to request the spreadsheets that the VE used to determine the number of jobs available for each occupation she provided. *Id.* at 296. Plaintiff provided her own evidence of SOC codes and the number of occupations that fall within each code after the hearing. AR 296-297. Plaintiff's evidence showed that there were 63,200 employees in the SOC code that contains the Ticket Taker job title. *Id.* at 296-297. In her request for the spreadsheets, Plaintiff argued that based on the number of titles that fell within the SOC, it was impossible for there to be 24,000 Ticket Taker jobs. *Id.* at 296. The Plaintiff did not support her argument with any additional data.

The ALJ declined to compel the spreadsheets and found the VE's methodology reliable. AR 33-34. The ALJ found that the sources the VE used were commonly used in the profession and that the results obtained from the methodology were consistent with the VE's professional expertise. *Id.*

The Ninth Circuit has reversed an ALJ's decision where there was a vast discrepancy between numbers provided by the VE and the numbers provided by the plaintiff. *See Buck*, 869 F. 3d at 1047 (finding discrepancies of up to 600,000 available jobs between the VE and the Plaintiff's job estimates using the same software). But here, Plaintiff fails to show a discrepancy between a number of jobs Plaintiff found using the same or similar sources and the VE's testimony that there were about 24,000 estimated Ticket Taker jobs in the national economy. Instead, Plaintiff argues that without the VE's spreadsheets, it is impossible to determine what methodology was used to produce the number of jobs in each given title that the VE provided. ECF No. 11 at 9.

But the Supreme Court has held that VE jobs numbers testimony may constitute a finding of no-disability even when the VE refuses to disclose the specific non-public data sources on which the estimates were based. *Biestek*, 587 U.S. at 108. Although the Supreme Court has acknowledged that an expert's refusal may preclude meaningful cross-examination, it has found that even absent specific data, a Plaintiff may probe the strength of the VE's testimony by asking

questions about her sources and methods. *Id.* at 107. Here, both the ALJ and the Plaintiff asked questions regarding the VE's sources, how she cross-referenced the sources, the type of data she gathered, and how she verified her numbers. AR 75-77. Given this in-depth testimony as to the VE's methodology, it cannot be said that the ALJ erred in refusing to compel the VE's spreadsheets. Nor can it be said that the VE's testimony was so feeble that it fails the substantial evidence bar. Accordingly, this Court finds that the ALJ's findings at step five were supported by substantial evidence. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).

### III.   CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal and remand (ECF No. 11) is DENIED.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment in favor of the Commissioner consistent with this Order and close this case.

DATED: December 5, 2025

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE